IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE


BERNARD JEROME JONES,        )
        )
        Plaintiff,        )
        )
v.        )        No.  14-1179-T
        )
COMMISSIONER OF        )
SOCIAL SECURITY,        )
        )
        Defendant.        )

---

## ORDER AFFIRMING DECISION OF COMMISSIONER

---

Plaintiff, *pro se*, has filed this action to obtain judicial review of Defendant Commissioner's final decision denying his application for supplemental security income ("SSI"). Plaintiff's application was denied initially and upon reconsideration and then, after a hearing, by order of an ALJ on March 15, 2013. Plaintiff filed a request for review by the Appeals Council. The Appeals Council affirmed the ALJ's decision.  This decision became the Commissioner's final decision.  Plaintiff then filed this action, requesting reversal of the decision of the Commissioner.  For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party.  "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with

or without remanding the cause for a rehearing." Id.  The court's review is limited to determining whether or not there is substantial evidence to support the Commissioner's decision, 42 U.S.C. § 405(g), and whether the correct legal standards were applied. See Lindsley v. Commissioner, 560 F.3d 601, 604–08 (6th Cir. 2009); Kyle v. Commissioner, 609 F.3d 847, 854 (6th Cir. 2010).

The Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.  See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007). When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the  opposite conclusion. See Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001);  Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986).

Plaintiff was born in 1961 and alleges that he became disabled on October 1, 2007. R. 117. In his disability report, he allege disability due to diabetes, vision problems, depression, and hemorrhoids. R. 135. In his brief, Plaintiff also mentions an anal fissure, hypertension, and gout. He last worked in 2008 as a groundskeeper. R. 29.

The ALJ enumerated the following findings: (1) Plaintiff has not engaged in substantial gainful since the application date; (2) Plaintiff has the medically determinable impairments of diabetes mellitus, hypertension, gout, and depression, but they are not severe because they do not significantly limit his ability to perform basic work-related activities for at least twelve consecutive months; (3) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The claimant bears the ultimate burden of establishing an entitlement to benefits. Born v. Secretary, 923 F.2d 1168, 1173 (6th Cir. 1990). The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Id.

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(a)(4); Howard v. Commissioner, 276 F.3d 235, 238 (6th Cir. 2002). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a). Here, the sequential analysis

proceeded to the second step with a finding that Plaintiff did not have a severe impairment, and, therefore, he was not disabled.

Plaintiff argues that the ALJ should have found that his mental impairments were severe. As evidence, Plaintiff points to his mental health treatment records which show that his therapist assigned him a global assessment of functioning ("GAF") score between forty-one and fifty-eight. R. 220-36, 293-306.[1] Plaintiff's argument is not persuasive.

The Act defines a disability as "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A medically determinable impairment is one that "results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms and laboratory findings, not only [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508.

At step two, a claimant bears the initial burden of proof to demonstrate that he has a severe impairment which is an impairment or combination of impairments which significantly limit his physical or mental ability to perform basic work activities without

_____

[1] The GAF is a 100–point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning. See *American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 32, 34 (Text Revision 4th ed.2000).

regard to age, education, or work experience.[2]  20 C.F.R. §§ 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a) (2013).  Thus, once the claimant has demonstrated a medically determinable impairment, he must show that his impairment also "significantly limits" his ability to perform work-related activities. <u>See</u> 20 C.F.R. § 404.1521.

The severity requirement is used to screen out claims that are medically groundless. <u>Higgs v. Bowen</u>, 880 F.2d 860, 863 (6th Cir. 1988) ("[T]his appeal presents the exceptional 'totally groundless' claim properly dismissed on the medical evidence alone. There is nothing in the objective medical record credibly suggesting that Mrs. Higgs was significantly affected by any of her impairments on or before June 30, 1979.")  An impairment is not severe if it is a " 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.' " <u>Farris v. Secretary</u>, 773 F.2d 85,  90 (6th Cir. 1985) (quoting <u>Brady v. Heckler</u>, 724 F.2d 914, 920 (11th Cir. 1984)).  Accordingly, if an impairment or combination of impairments would have no more than a minimal effect on a claimant's ability to work, the sequential evaluation process is terminated at step two. <u>Id.</u>; <u>see</u> <u>also</u> <u>Henderson v. Sullivan</u>, 930 F.2d 19 (8th Cir. 1991).

The Court of Appeals discussed <u>Higgs</u> in <u>Long v. Apfel</u>, 1 Fed.Appx. 326 (6th Cir. 2001).

---

[2]  Basic work activities encompass the abilities and aptitudes necessary to perform most jobs, such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, performing, and remembering simple instructions; using judgment; responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work situation.  20 C.F.R. §§ 404.1521, 416.921.

In Higgs v. Bowen, this court declared that 'an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience.' Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir.1988). The Higgs court observed that 'this lenient interpretation of the severity requirement in part represents the courts' response to the Secretary's questionable practice in the early 1980s of using the step two regulation to deny meritorious claims without proper vocational analysis.' Id. But the court also recognized that 'Congress has approved the threshold dismissal of claims obviously lacking medical merit....' Id. That is, 'the severity requirement may still be employed as an administrative convenience to screen out claims that are "totally groundless" solely from a medical standpoint.' Id. at 863. Indeed, the Higgs court approved of that practice; it affirmed dismissal because the record contained no objective medical evidence to support Ms. Higgs's claims of severe impairment. Particularly relevant to the case at bar, the Higgs court observed. 'The mere diagnosis of [an ailment], of course, says nothing about the severity of the condition.' Id. When doctors' reports contain no information regarding physical limitations or the intensity, frequency, and duration of pain associated with a condition, this court has regularly found substantial evidence to support a finding of no severe impairment. See, e.g., id. (citing cases).

Caselaw since Higgs confirms this circuit's practice in that respect. Compare Maloney v. Apfel, 211 F.3d 1269 (table), No. 99-3081, 2000 WL 420700 at (6th Cir.2000) (per curiam) (finding substantial evidence to support denial when record indicated claimant showed symptoms and was diagnosed with disorder but did not contain evidence of a disabling impairment that would prevent work); and Foster v. Secretary of Health & Human Svcs., 899 F.2d 1221 (table). No. 88-1644, 1990 WL 41835 at *2 (6th Cir.1990) (per curiam) (finding substantial evidence to support denial when the claimant produced no evidence regarding the frequency, intensity, and duration of arthritic pain; the record indicated that he was no more than slightly or minimally impaired); with Burton v. Apfel, 208 F.3d 212 (table), No. 98- 4198. 2000 WL 125853 at *3 (6th Cir.2000) (reversing finding of no severe impairment because record contained diagnoses and remarks from a number of treating physicians and psychologists to the effect that claimant was 'unable to work ... due to the complexity of her health problems' (quoting physician)); and Childrey v. Chater, 91 F.3d 143 (table). No. 95-1353, 1996 WL 420265 at *2 (6th Cir.1996) (per curiam) (reversing finding of no severe impairment because record contained an assessment by a consulting physician reflecting a variety of mental problems that left her ''not yet able to really care for herself alone,

reports of two other physicians corroborating this, consistent testimony from the claimant, and no medical evidence to the contrary (quoting physician)).

The court in <u>Long</u> upheld the decision of the Commissioner because the record did "not contain a single statement by a treating physician indicating that Long's health problems result in any specific work-impairing limitations." 1 Fed.Appx. at 332.

The ALJ here, as in <u>Long</u>, concluded that Plaintiff had failed to establish that his medically determinable impairments were severe because the evidence failed to show any significant limitation in his ability to perform basic work-related activities. Plaintiff's mental status examinations revealed essentially no limitation, and he was consistently described as having intact memory, appropriate thought content, neat appearance, cooperative behavior, and appropriate speech. R. 234, 293, 295, 297, 303-05.

Plaintiff sought mental health care from Pathways beginning September 23, 2010. R. 220. Plaintiff said he felt depressed, but he was noted to have fair attention/concentration, memory, and concentration. R. 220, 227. Plaintiff returned for treatment on September 29, 2010, and reported depression, but he had intact memory, appropriate thought content, neat appearance, cooperative behavior, and appropriate speech. R. 234. He was assigned a GAF of forty-eight. R. 234. Treatment notes showed similar clinical signs on October 27, 2010, December 8, 2010, and February 7, 2011. R. 303-05. During the December 8, 2010, visit, Plaintiff's GAF was listed as fifty-three. R. 304.

Plaintiff did not follow-up until June 27, 2011, when he returned to Pathways, reporting that he was depressed and out of medication, but his mental status was again

normal except for complaints of waking up at night. R. 302. Despite the lack of reported symptoms, the counselor assigned a GAF of fifty-eight. R. 297, 302. Plaintiff returned on September 2, 2011, reporting that his medications were working well. R. 295. His clinical signs were again normal. R. 295. On December 14, 2011, Plaintiff reported that his medicine continued to work well for him. R. 294. On March 7, 2012, his examination was essentially the same, and his GAF was listed as fifty-eight. R. 293.

In assessing alleged mental impairments, the ALJ must use the "special technique" found at 20 C.F.R. §§ 404.1520a(c)(3), (d)(1); 416.920a(c)(3), (d)(1); 20 C.F.R. pt. 404, subpt. P, app. 1, §12.00C (2014). Under the special technique, the ALJ analyzes Plaintiff's ability to function in four general domains: daily living, social function, persistence and pace, and episodes of decompensation. For the first three domains, the ALJ will rate the claimant on a five-point scale beginning with "none," then "mild," "moderate," "marked," and "extreme." Decompensation is rated on a four-point scale: "none," "one or two," "three," or "four or more." <u>See</u> 20 C.F.R. § 404.1520a(c). When a claimant has no more than "mild" limitations in any of the four domains that form the special technique, the mental impairment is deemed non-severe. <u>See</u> 20 C.F.R. §§ 404.1520a(d)(1); 416.920a(d)(1) (2012) (under the "special technique," if the claimant's has no more than "mild" limitations in daily living, social function, concentration/persistence/pace, or decompensations, the mental impairment will be found non-severe).

The ALJ concluded that Plaintiff had no more than mild limitations in any of the four domains. For instance, Plaintiff did not have any limitation in his ability to handle normal

activities of daily living. See 20 C.F.R pt. 404, subpt. P, app. 1, § 12.00(C)(1) (activities of daily living contemplates "adaptive activities" like cleaning, shopping, cooking, and maintaining a residence). Plaintiff had no problem with his personal care, and he took care of his dogs, did household and yard chores, prepared simple meals, did his own shopping, drove a car, used a computer, watched television, and shot pool. R. 159-64, 222. Also, Plaintiff did not have any difficulty with community living skills like managing money, accessing health services, or hygiene. R. 224.

There was no evidence of any difficulty with social function. See 20 C.F.R pt. 404, subpt. P, app. 1, § 12.00(C)(2) (social functioning means getting along with others). Plaintiff dealt with authority figures respectfully and spent time with friends and family. R. 163. He stated that he went to church. R. 163. Plaintiff reported that he had a support system at church and with family and friends. R. 222.

Next, the ALJ considered Plaintiff's concentration, persistence, and pace, concluding that Plaintiff had only a mild limitation. See 20 C.F.R pt. 404, subpt. P, app. 1, § 12.00(C)(3) (this domain refers to the claimant's ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings). Plaintiff was able to count change and handle money, and he did not need reminders for hygiene or medication. R. 160. Plaintiff did not have any difficulty with memory, completing tasks, concentrating, understanding, or following instructions. R. 162.

An "episode of decompensation" is defined as an exacerbation of symptoms causing loss of adaptive functioning, which means that the person can no longer perform activities

of daily living, maintain social relationships, and so on. <u>See</u> 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(4). Such an episode may be inferred from evidence like inpatient hospitalization or placement in a halfway house, or a "significant change" in medication, or both. There is no evidence that Plaintiff ever decompensated.

Plaintiff's reliance on his GAF scores is misplaced. "GAF is a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning." <u>Konecky v. Commissioner</u>, 167 F. App'x 496, 503 n. 7 (6th Cir. 2006). Scores may help an ALJ assess mental residual functional capacity, but a GAF score is not raw medical data. Instead, it allows a mental health professional to express an encapsulated opinion of a patient's functioning. <u>See</u> <u>id.</u> (citing *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000)); Social Security Administration, "Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury," 65 Fed. Reg. 50746, 50764-65, 2000 WL 1173632 (August 21, 2000). No particular amount of weight is required to be placed on a GAF score. <u>See</u> <u>Johnson v. Commissioner</u>, 535 F. App'x 498, 508 (6th Cir. 2013) (GAF not controlling when the ALJ relied on "medical records and nonmedical opinions in assessing the extent of Johnson's mental impairments").

Because Plaintiff has pointed to no evidence showing any lasting or credible work-related restrictions during the relevant period, substantial evidence supports the ALJ's decision, and the decision must be AFFIRMED. The clerk is DIRECTED to enter judgment accordingly.

IT IS SO ORDERED.

s/ **James D. Todd**

JAMES D. TODD
UNITED STATES DISTRICT JUDGE